UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-01755 JGB (SHKx)** | Date | October 27, 2023 |
|---|---|---|---|
| Title | *Cristina Holandez, et al. v. Entertainment, LLC, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order: (1) GRANTING IN PART AND DENYING IN PART Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 149); and (2) VACATING October 30, 2023 Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' motion for partial summary judgment ("MSJ," Dkt. No. 149). The Court determines the MSJ is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the MSJ, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' MSJ and **VACATES** the October 30, 2023 hearing.

## I.    BACKGROUND

On October 18, 2021, a group of individuals working as exotic dancers ("Plaintiffs") filed a collective action suit against the operators of the club at which they work—Entertainment LLC, Dragoslav Djurickovic[1], and Christina Webb ("Defendants")—alleging claims flowing from the purported mischaracterization of Plaintiffs as independent contractors. (See Dkt. Nos. 1, 26.) On December 20, 2021, Plaintiffs amended the complaint as of right. ("FAC," Dkt. No. 26.) The FAC asserts twelve claims: Fair Labor Standards Act ("FLSA") violations for (1) failure to pay minimum wage, (2) taking of tips, (3) illegal kickbacks, (4) forced tip sharing; (5) failure to pay minimum wage in violation of Cal. Labor Code §§ 1194, 1197; (6) failure to pay overtime wages in violation of Cal. Labor Code §§ 510, 1194, 1197; (7) failure to furnish accurate wage

---

[1] Djurickovic, who died on September 17, 2021, was the owner-operator of Entertainment and the husband of Christina Webb. (See Dkt. No. 45-13.) The Estate of Djurickovic was dismissed as a defendant in 2022. (See Dkt. No. 77.)

statements in violation of Cal. Labor Code § 226; (8) waiting time penalties under Cal. Labor Code §§ 201-203; (9) failure to indemnify business expenses in violation of Cal. Labor Code § 2802; (10) compelled patronization of employer and/or other persons in violation of Cal. Labor Code § 450; (11) violation of Cal. Labor Code § 350 et seq.; and (12) unfair competition in violation of Cal. Bus. & Prof. Code § 17200 et seq. (See FAC.)

On May 24, 2022, the Court ruled on the host of motions Defendant filed attacking the FAC (Dkt. No. 77), including (1) a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) (Dkt. No. 45); (2) a motion to dismiss for deficient service under Rule 12(b)(5) (Dkt. No. 46); (3) a motion to dismiss Defendant Christina Webb under Rule 12(b)(6) ("Webb Motion to Dismiss" or "Webb MTD," Dkt. No. 47); and (4) a motion to compel arbitration (Dkt. No. 44). The Webb Motion to Dismiss is relevant to the instant MSJ. In that motion, Defendants contested Webb's status as an "employer," and sought to dismiss the FAC as against Webb on that basis. (See Dkt. No. 47.) The Court held that Webb could be liable for violations as an employer based on the allegations in the FAC, but only for those violations that occurred since she assumed control of Angels Cabaret upon the death of her husband. (Id. at 10–12.)

**A. Motion to Withdraw and Entertainment, LLC's Default**

On August 4, 2023, the law firm Leech Tishman Fuscaldo & Lampl LLC ("Counsel" or "Leech Tishman"), who represented Defendants since the inception of this action, moved for leave to withdraw as counsel. ("Motion to Withdraw," Dkt. No. 150 ¶ 3.) Leech Tishman asserted the following grounds for withdrawal: (1) Defendants failed to pay Counsel for over a year (Motion to Withdraw ¶¶ 11, 13); (2) Counsel could no longer represent Defendants consistent with their ethical obligations (id. ¶ 15); and (3) Defendants' failure to communicate with Counsel rendered the representation "unreasonably difficult" (see id. ¶¶ 16–17). Leech Tishman notified Plaintiffs' counsel of their intention to withdraw as counsel of record telephonically and via writing. (Motion to Withdraw ¶¶ 19–20.)

Plaintiffs filed an opposition on August 21, 2023. (See Dkt. No. 151.) Leech Tishman filed a reply on August 28, 2023. (See Dkt. No. 155.) On September 7, 2023, the Court granted the Motion to Withdraw. ("Order on MTW," Dkt. No. 157.) In that order, the Court explained that Defendant Entertainment, LLC could not proceed in the litigation without legal representation given its entity status. (Id. at 5; see L.R. 83-2.3.1.) The Court thus ordered Defendant Entertainment, LLC to file a notice of appearance of new counsel no later than October 10, 2023 and ordered Webb to notify the Court in writing by that same date whether she intended to proceed *pro se*. (Id. at 5–6.)

On September 25, 2023, the parties filed a joint stipulation to continue trial and all trial-related deadlines. (Dkt. No. 161.) Christina Webb signed that joint stipulation on her own behalf, in *pro per*, and on behalf of Entertainment, LLC (despite the Court's clear instruction that Entertainment required legal counsel). (See id.) The Court took this submission as evidence of Webb's intent to proceed *pro se* in compliance with its September 7, 2023 order.

Defendant Entertainment, LLC, however, failed to file a notice of appearance of new counsel by October 10, 2023.  The Court therefore ordered the Clerk to enter default against Entertainment, LLC.  (See Dkt. No. 163.)  On October 11, 2023, the Clerk entered default against Entertainment, LLC.  (Dkt. No. 164.)  Christina Webb is now the only remaining defendant in the case.  Given the entry of default against Entertainment, LLC, Plaintiffs' MSJ is **DENIED AS MOOT** as to Entertainment.  The Court will thus only analyze Plaintiffs' arguments to the extent they relate to Defendant Webb.

### B.  Plaintiffs' Motion for Partial Summary Judgment

On August 4, 2023, Plaintiffs moved for partial summary judgment.  (MSJ.)  In support of their MSJ, Plaintiffs filed a statement of undisputed facts ("SUF," Dkt. No. 149-1), as well as the following declarations and exhibits:

- Declaration of John P. Kristensen, Esq. ("Kristensen Decl.," Dkt. No. 149-2) and Exhibits 1–6 thereto (Dkt. Nos. 149-3–149-8);
- Declaration of Bianca Gorospe ("Gorospe Decl.," Dkt. No 149-9);
- Declaration of Arielle Arrey ("Arrey Decl.," Dkt. No. 149-10);
- Declaration of Kennedy Anderson ("Anderson Decl.," Dkt. No. 149-11);
- Declaration of Natacha Gaitan ("Gaitan Decl.," Dkt. No. 149-12); and,
- Declaration of Natalia Fleming ("Fleming Decl.," Dkt. No. 149-13).

Plaintiffs move for partial summary judgment on the following four issues:

1. The purported misclassification of Plaintiffs as independent contractors under both FLSA and California law;
2. Christina Webb's alleged liability as an employer of Plaintiffs who worked at Angels Cabaret since September 18, 2021, under both FLSA and California law;
3. Webb's alleged failure to meet her burden on the affirmative defense of good faith as a matter of law; and,
4. Webb's purportedly willful failure to comply with the dictates of FLSA.

(MSJ at ii.)

On August 21, 2023, Defendants filed their opposition to Plaintiffs' MSJ.  ("Opposition," Dkt. No. 153.)  In support of their Opposition, Defendants filed a Declaration of Robert Orozco ("Orozco Decl.," Dkt. No. 153-1) and six evidentiary objections, one for each of the declarations submitted by Plaintiffs.  (See Dkt. Nos. 153-2–153-7.)  Defendants failed to submit a statement of genuine disputes of material fact with their Opposition, in violation of this Court's Standing Order.  ("Standing Order," Dkt. No. 12.)  Plaintiffs filed their Reply on August 28, 2023.  ("Reply," Dkt. No. 155.)

//
//

## II. FACTS

### A. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. Proc. 56(e). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. See, e.g., Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The Court considers the parties' objections only where necessary and all other objections are **OVERRULED AS MOOT**.

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.") At the summary judgment stage, the Court focuses on the admissibility of the evidence's contents, not the admissibility of the evidence's form. Fed. Deposit Ins. Corp. v. N.H. Ins. Co., 953 F.2d 478, 485 (9th Cir. 1991) ("[T]he nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

The Court denies some of the parties' objections as "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." Doe v. Starbucks, Inc., 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009); Amaretto Ranch Breedables v. Ozimals Inc., 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012) ("This Court need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development"); Communities Actively Living Indep. & Free v. City of Los Angeles, 2011 WL 4595993, at *8 (C.D. Cal. Feb. 10, 2011) (summarily overruling boilerplate evidentiary objections when the grounds for the objections were unduly vague and overbroad).

The Court overrules Webb's personal knowledge and foundation objections; the evidence relied upon in the order below has a sufficient basis in personal knowledge and foundation to be considered. The parties' hearsay objections are likewise overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in an admissible form at trial. Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004). Furthermore, "[i]f the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." Calmat Co. v. U.S. Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004). At this stage, the Court does not find Webb's hearsay objections to be preclusive of the evidence submitted.

//
//

### B. Disputed and Undisputed Facts

"In determining any motion for summary judgment or partial summary judgment, the court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." See Fed. R. Civ. P. 56(e)(2); L.R. 56-3. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion." Elguezabal v. Hwang, 2015 WL 13918496, at *2 (C.D. Cal. Aug. 21, 2015) (citing Fed. R. Civ. P. 56(e)(2)).

At the outset, the Court notes that this is not a typical motion for summary judgment. Normally, the opposing party disputes at least some of the purportedly undisputed facts submitted by the movant. Here, however, Defendant Webb does not substantively dispute the facts offered by Plaintiffs; instead, she requests under Federal Rule of Civil Procedure 56(d) that the Court defer consideration of the motion to allow additional time to take discovery. (See Opposition.) For the reasons below, the Court denies that request. As such, the facts alleged by Plaintiffs are largely uncontroverted due to Defendant Webb's failure to dispute them. To the extent those facts are adequately supported by admissible evidence, they are "admitted to exist without controversy" for purposes of the MSJ. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Although Webb has generally failed to dispute the facts submitted by Plaintiffs, the various exhibits and declarations filed in support of Plaintiffs' MSJ nonetheless evidence that some of the facts alleged by Plaintiffs are disputed or are insufficiently supported. Unless otherwise indicated, the material facts that follow are sufficiently supported and undisputed.

1. **Angels Cabaret**

Angels Cabaret ("Angels") is an adult strip club, or gentlemen's club, located at 3020 Coronado Street, Anaheim, California 92806. (SUF ¶¶ 1–3.) At Angels, topless dancers are the primary form of entertainment. (Id. ¶ 1.) Plaintiffs are a group of exotic dancers who worked at Angels within the past four years. (Id. ¶ 7.) For a dancer to be hired to work at Angels, she must audition; there are no major requirements for dancers except that they are willing to dance topless and are of legal age. (Id. ¶¶ 49–50.)

The dancers' primary role is to entertain Angels's customers with topless dancing. (Id. ¶ 21.) The dancers perform on stage, on the floor of the club, and, for VIP dances, in booths. (Id. ¶¶ 38–40.) DJs play music at Angels and call dancers by their stage names when it is their turn to dance on stage. (Id. ¶ 37.) If customers want a VIP dance, they pay the club directly in advance. (Id. ¶ 44.) Dancers are required to pay "stage fees"—that is, fees to use the locker room while they work—in an amount set by the club. (Id. ¶¶ 54–55.)

To enter Angels, customers must pay a cover charge of $5 during the day or $10 in the evening. (Id. ¶¶ 30, 32.)  The owner of the club has authority over which customers could enter and which customers were asked to leave the club. (Id. ¶ 31.)  There is no time limit for how long dancers can be employed. (Id. ¶ 3.)  If customers were present at the club after closing time, dancers would continue to perform dances for those customers. (Id. ¶ 64.)  Angels has a revenue of approximately $85,000 to $90,000 per month and advertises via Instagram, Facebook, videos, and print flyers. (Id. ¶¶ 28–29.)  Dancers do not pay for any of Angels's advertising. (Id. ¶ 60.)  However, dancers tip other Angels employees, including managers, DJs, and security staff/doormen. (Id. ¶ 62.)  If disputes arise between customers and dancers at Angels, Angels's hosts, managers, or doormen step in to resolve them. (Id. ¶ 53.)  Dancers do not have authority as to whether a customer would be asked to leave Angels. (Id. ¶ 63.)

Plaintiffs assert that certain facts concerning fees paid by dancers to Angels, or by customers to Angels, are uncontroverted.  Although the declarations cited in Plaintiffs' SUF support those conclusions, the deposition testimony cited by Plaintiffs to support those conclusions directly contradicts the declarations.  Those facts are thus in controversy.[2]

First, Plaintiffs allege that dancers do not have authority to set dance prices at Angels and that the owner of the club sets the prices for table lap dances and VIP dances. (Id. ¶¶ 41, 42, 45.)  Defendant Webb's sworn deposition testimony contradicts these allegations and makes clear that the club sets the *base* prices for these dances, but "the [dancers] can charge whatever they want" beyond that base price. ("Webb Dep. Tr.," Dkt. No. 149-4 at 44:16–21.)  When asked about the dance pricing model, Webb explained: "[A]t the end of the day, you know, to be honest, the club doesn't even know how much these girls truly leave with.  We only know how much they leave with as far as the lap dance that the customer pays for in the beginning.  When they get into the room, the customer could give them however much money; the club does not know." (Id. at 44:21–45:2.)  The deposition testimony of Robert Garcia, a manager of Angels, confirms Webb's statements.  Garcia testified that the club employs "base prices" and "[t]he girls do negotiate and have different prices of their own for the dance." ("Garcia Dep. Tr.," Dkt. No. 149-5 at 42:1–7.)  Given this clearly contradictory testimony (again, cited by Plaintiffs themselves), these facts are by no means uncontroverted.

Second, Plaintiffs allege that VIP dances are charged by time increments per Angels policy. (SUF ¶ 43.)  Once again, the declarations Plaintiffs cite support this conclusion, but the cited deposition testimony contradicts it.  Webb and Garcia both testified that although base prices for VIP dances are based on number of minutes or number of songs, dancers can ultimately charge whatever they wish for each VIP dance. (See Webb Dep. Tr. at 44:16–45:2; Garcia Dep. Tr. at 42:1–7.)  This fact is thus disputed.

---

[2] It is unclear why Plaintiffs cite testimony which obviously contradicts their Statement of Unopposed Facts.  Nor is it clear why Plaintiffs would represent to the Court that those facts are undisputed when Plaintiffs are clearly aware of such contradictory testimony.  The Court presumes these errors are inadvertent and result from an egregious misreading of the cited testimony, and not from willful misrepresentation.  In any event, the Court admonishes Plaintiffs.

Third, Plaintiffs allege that Angels keeps a percentage of all VIP dance fees, and dancers are required to split a portion of all other dance fees with Angels. (SUF ¶¶ 46–47.) According to Webb and Garcia, not so. Webb testified that when customers request a VIP dance, they pay the club one price, which is comprised of a "booth rental" fee for the club and a dance fee for the dancer. (Webb Dep. Tr. at 41:1–42:5.) Once the dancer has given the VIP customer the requested dance, she then collects the full dance fee from the club (in addition to whatever other amount she might charge the customer), and the club keeps the booth rental fee. (See id. ("So how that works is the club has a set price that they get paid from the customer to rent the booth . . . [T]he customer pays the club that amount, and then the girls have a set fee that the customer pays for them. And the girls keep all of that money.").) In sum, Plaintiffs contend that Webb skims money off the top of VIP dance fees, but Webb characterizes the practice as taking two separate fees, one for the club and one for the dancer. Moreover, Webb's testimony is crystal clear that, in general, "[t]he club does not keep a dollar of the girls' lap dance money," and for dances which take place on the floor, and money dancers make onstage, "[t]he club doesn't make a dime off that. They can choose whatever amount they want the customer to pay them." (Id. at 43:1–8.) These key facts are thus disputed.

### 2. Ownership and Management of Angels Cabaret

In 2016, Dragoslav Djurkickovic, informally known as "Danny," bought Entertainment LLC, which owns Angels Cabaret, with Stephen Levine. (Id. ¶ 5.) Djurkickovic gained full ownership of Entertainment LLC in 2018 and was the sole owner until he passed away on September 17, 2021. (Id. ¶¶ 8–9.) While Djurkickovic owned Entertainment, he had the authority to hire and fire people who work at Angels. (Id. ¶¶ 15–16, 23.) Djurkickovic was often present at the club, but when he was not, he would call the club to check in. (Id. ¶ 10.)

Since September 18, 2021, Djurkickovic's widow, Christina Webb, has run Angels due to her status as the administrator for her late husband's estate. (Id. ¶¶ 11–12, 14.) Webb now pays the club's utility bills, rent/mortgage payments, and for fixtures inside the club, such as the stage and dance poles. (Id. ¶¶ 56–59, 61.) She also authorized and handled renovations at the club, without any input from dancers. (Id. ¶ 6.) Webb maintained records of Angels dancers, including Plaintiffs, by using log-in sheets. (Id. ¶ 66.) Webb now oversees the operations of the club, including its opening and closing hours, and gives directions to other managers and employees of the club. (Id. ¶¶ 18–19, 24.) She also has the authority to hire and fire people who work at Angels, and put her boyfriend, Jamie Fuentes, in charge of the club. (Id. ¶¶ 15–16.) Like Djurkickovic before her, Webb is often present at the club, but when not present, calls the club to check in. (Id. ¶ 10.) Webb also has the authority to check Angels's video cameras to ensure work is being completed and has done so multiple times. (Id. ¶ 17.)

### C. LEGAL STANDARD

**A. Summary Judgment**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of informing the district court of the basis for its motion and identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Importantly, a court may not grant a motion for summary judgment solely because the nonmovant has not opposed the motion. Cristobal v. Siegel, 26 F.3d 1488, 1494–95 & n.4 (9th Cir. 1994) (stating that an unopposed motion may be granted only after the court determines that there are no material issues of fact). A court may grant summary judgment "only where the moving party demonstrates that, in light of the undisputed facts in the record, it is entitled to judgment as a matter of law." Kinsale Ins. Co. v. Golden Beginnings, LLC, 2021 WL 4205059, at *1 (C.D. Cal. Sept. 15, 2021) (citing Fed R. Civ. P. 56(e)(3) and L.R. 7-12); Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 n.1 (9th Cir. 2010) ("Ninth Circuit precedent bars district courts from granting summary judgment simply because a party fails to file an opposition or violates a local rule, and [district courts must] analyze the record to determine whether any disputed material fact [i]s present.").

B. **FRCP 56(d)**

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a

court may defer consideration of a summary judgment motion or deny it, allow additional time to take discovery, or issue any other appropriate order. The party seeking relief pursuant to Rule 56(d) carries the burden "to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Atay v. County of Maui, 842 F.3d 688, 698 (9th Cir. 2016) (citing Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)).

The party requesting relief under Rule 56(d) must show: (1) specific reasons why the alleged evidence was not discovered or obtained earlier in the proceedings; (2) specific facts it hopes to elicit from additional discovery; (3) that the facts sought actually exist; and (4) that these sought-after facts would overcome the opposing party's motion for summary judgment. Hollyway Cleaners & Laundry Co. v. Central National Insurance Co. of Omaha, Inc., 219 F. Supp. 3d 996, 1003 (C.D. Cal. 2016) (citing Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008)). A district court "does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past." Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996) (citation omitted).

### D.     DISCUSSION

Plaintiffs move for partial summary judgment on (1) the purported misclassification of Plaintiffs as independent contractors, (2) Christina Webb's personal liability for Plaintiffs who worked at Angels since September 18, 2021, (3) Webb's good faith affirmative defense, and (4) whether Webb's failure to comply with FLSA was willful. (MSJ at ii.) Although not styled as a motion under Federal Rule of Civil Procedure 56(d), Webb's Opposition largely consists of argument concerning her request under that rule for an extension of time to respond. The Court resolves that issue before turning to Plaintiffs' arguments.

As discussed below, the tests for identifying employer-employee relationships differ under FLSA and California law. The California law employer-employee tests are used to determine (1) whether an individual—here, Webb—is an employer, *and* (2) whether those hired by the purported employer to do some sort of work—here, Plaintiffs—are independent contractors or employees. If after consideration of the relevant employer-employee test the Court concludes that an employer-employee relationship exists between Webb and Plaintiffs, then it is established both that Webb is an employer who can be liable for claims stemming from that employment relationship, and that Plaintiffs are employees as opposed to independent contractors. Under FLSA, however, there are two distinct tests, one for determining whether hired individuals are independent contractors or employees, and another to determine whether an individual can be personally liable as an employer under FLSA. See Boucher v. Shaw, 572 F.3d 1087 (9th Cir. 2009). The Court thus proceeds by analyzing under California law whether an employer-employee relationship exists between Webb and Plaintiffs which render Webb a personally liable employer and Plaintiffs her employees. The Court then addresses worker classification under FLSA, before finally turning to Webb's personal liability under FLSA, her good faith affirmative defense, and whether any FLSA violations are willful.

### A.   Webb's Rule 56(d) Request

Webb fails to demonstrate that she is entitled to relief pursuant to Rule 56(d). Webb argues that to adequately oppose the MSJ, she must take depositions of those Plaintiffs who submitted declarations in support of the MSJ. (Opposition at 3–5.) Webb fails to allege sufficient reasons why the alleged evidence was not discovered or obtained earlier in the proceedings. Indeed, the only reason Webb offers for her failure to take the necessary discovery is that the relationship between her and her counsel was "irreparably damaged" and thus "counsel could not proceed in the matter including but not limited to conducting discovery or otherwise continuing with its pre-trial obligations." (Id. at 4.) By her own admission, Webb was not diligent in conducting discovery due to her failure to communicate with her counsel. Denial of relief pursuant to Rule 56(d) is proper if the movant has failed to conduct discovery diligently. Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment"); Landmark Dev. Corp. v. Chambers Corp., 752 F.2d 369, 372 (9th Cir. 1985) (ruling that district court properly denied Rule 56(d) motion because the "[f]ailure to take further depositions apparently resulted largely from [their] own delay."). The Court thus rejects Webb's Rule 56(d) request.

**B. Employer-Employee Relationship**

Plaintiffs move for summary judgment regarding their purported misclassification as independent contractors under both California law and FLSA and seek to hold Webb liable as an employer in her own right.

### 1. Employer-Employee Relationship Under California Law

California law recognizes two tests for identifying an employer-employee relationship. The general common law framework for determining whether an employment relationship exists for the purposes of California labor law is supplied by S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341 (1989). Under Borello, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired[.]" Id. at 350 (internal quotations omitted). In applying the Borello test, courts also consider the following secondary factors:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

Id. at 351.

Historically, claims governed by California's Industrial Welfare Commission's (IWC) definition of employment were subject to a broader standard, which "incorporates the common law definition *as one alternative*." Martinez v. Combs, 49 Cal. 4th 35, 64 (2010), as modified (June 9, 2010).  In Martinez, the California Supreme Court held that the IWC's definition of "to employ" included three alternative definitions: "(a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship."  Id.  As to the first definition, the court noted that it "encompasses 'any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person[.]'"  Id. at 71 (quoting Wage Order No. 14 (Cal. Code Regs., Tit. 8, § 11140, subd. 2(F)).  Under Martinez, "control over *any one* of the three aspects—wages, hours, or working conditions—is sufficient to impute employer liability under California wage and hour law." Perez v. DXC Technology Services LLC, 2020 WL 5517276, *4 (N.D. Cal. Sept. 14, 2020) (citing Haralson v. United Airlines, Inc., 224 F. Supp. 3d 928, 939 (N.D. Cal. 2016)) (emphasis added).

In Dynamex Operations W. v. Superior Court, the California Supreme Court adopted a test known as the "ABC test" for interpreting the "suffer or permit to work" prong of the IWC's definition of employ.  4 Cal. 5th 903, 956–57 (2018), reh'g denied (June 20, 2018).  Under that test, the hiring entity bears the burden of establishing that a worker is an independent contractor rather than an employee.  Id. at 957.  In order to meet that burden, it must establish each of the test's three elements:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

Id.  Thus, if the putative employer fails to establish any one of the three prongs with regard to a worker, the worker is properly classified as an employee.

Post-Dynamex, the application of the Borello or Martinez/ABC test frameworks depended on whether the claim at issue was a statutory or a wage order claim.  This dichotomy flowed from the limited holdings of both Martinez and Dynamex, which specifically interpreted the definitions of "employ" found in the IWC wage orders and did not reach the question of whether the ABC test should apply to claims under the Labor Code.  See Martinez, 49 Cal. 4th at 64 ("As defined in the wage orders, '[e]mployer means any person . . . who . . . employs or exercises control over the wages, hours, or working conditions of any person,' and '[e]mploy means to engage, suffer, or permit to work.'") (quoting Wage Order No. 14, Cal. Code Regs., tit. 8, § 11140, subd. 2(C), (F)); Dynamex, 4 Cal. 5th at 913 ("Here we must decide what standard applies, under California law, in determining whether workers should be classified as employees

or as independent contractors *for purposes of California wage orders*."). California courts thus concluded that the IWC's definitions of "employ" do not extend to purely statutory claims. See, e.g., Garcia v. Border Transp. Grp., LLC, 239 Cal. Rptr. 3d 360, 369 (2018) (concluding that, under the logic of Dynamex, the "'suffer or permit to work' standard (and the ABC test that explicates it)" controlled wage order claims, while the Borello test controlled non-wage order claims).[3]

In 2020, the California legislature largely did away with the Borello-Martinez/ABC test dichotomy and adopted the ABC test for all claims that arise under the California Labor Code, unless a statutory or IWC Wage Order exception applies.[4] See Cal. Lab. Code § 2775(b)(1), (2); Parada v. E. Coast Transp. Inc., 277 Cal.Rptr.3d 89, 94 n.2 (2021); see also Salinas v. Cornwell Quality Tools Co., 635 F. Supp. 3d 979, 990 (C.D. Cal. 2022). As such, the ABC test is the correct employer-employee relationship test for most California state law claims.

Here, Plaintiffs assert that the ABC test applies. The Court agrees. Because the ABC test places the burden on the hiring entity, to obtain summary judgment on this issue, Plaintiffs must show that Webb fails to establish that Plaintiffs do not qualify as employees under the ABC test. See Salinas, 635 F. Supp. 3d at 990. Plaintiffs allege that Webb does not satisfy her burden on any of the three ABC test elements.

### a. Prong A – Freedom from Control and Direction

Under the first prong of the ABC test, a worker is an employee unless the hiring entity establishes "that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact." Dynamex, 4 Cal. 5th at 955. "[D]epending on the nature of the work and overall arrangement between the parties, a business need not control the precise manner or details of the work in order to be found to have maintained the necessary control that an employer ordinarily possesses over its employees, but does not possess over a genuine independent contractor." Id. (citing Borello, 48 Cal. 3d at 353-54.) The key inquiry here "is not how much control a hirer exercises, but how much control the hirer retains the *right* to exercise." Ayala v. Antelope Valley Newspapers, Inc., 59 Cal. 4th 522, 533 (2014) (emphasis in original).

Plaintiffs contend that Webb cannot disprove that she has the right to, and indeed does, exercise control over Plaintiffs' work at Angels. According to Plaintiffs, Webb's control is

---

[3] The Ninth Circuit likewise concluded that Dynamex applies only to wage order claims. Vazquez v. Jan-Pro Franchising Int'l, Inc., 986 F.3d 1106 (9th Cir. 2021). There, the court stated that "*Dynamex* . . . is about wage orders. There is no reason that the tests for employee status must necessarily be the same in wage order cases as in [other types of] cases." Id. at 1123.

[4] Borello is not dead. Under California Labor Code section 2775(b)(3), if a court rules that the ABC test "cannot be applied to a particular context based on grounds other than an express exception to employment status . . . then the determination of employee or independent contractor status in that context shall instead be governed by" Borello.

demonstrated by her sole ownership of Angels, setting the club's hours, auditioning and hiring dancers, tracking dancers by using a log-in sheet upon their arrival, setting base prices for VIP and table lap dances, collecting payment for VIP dances in advance and requiring that customers book those dances through the club instead of the dancers, and paying all operational costs at Angels. (See SUF ¶¶ 11–14, 26, 41, 43–49; MSJ at 8–10, 17.) Webb also sets the cover charge to enter the club and has ultimate control over who can enter the club. (SUF ¶¶ 30–33.) Finally, dancers are required to pay locker fees to work at Angels, in an amount set by Webb and the club's managers. (Id. at ¶¶ 54–55.)

Defendant's Opposition does not dispute these facts. However, in its review of the evidence cited by Plaintiffs in support of their MSJ, the Court identified the following key statements made during depositions which show Webb did not execute complete control over Plaintiffs' work. First, dancers can and do charge customers more than the base price set by Webb and have full control over the price of lap dances which take place on the floor. (See Webb Dep. Tr. at 44:16–45:2.) The club, and by extension, Webb, do not know how much money the dancers take home on any given day. (Id.) Second, in Webb's view, the club does not take a dollar of the VIP dance fees; instead, the club charges a separate booth rental fee, and the dancers take home their full dance fee. (Id. at 43:1–8.)

Viewing the evidence in the light most favorable to Webb, although a close call, the Court finds a genuine dispute exists as to whether Webb reserves the requisite degree of control and direction over Plaintiffs to establish an employment relationship under the first prong of the ABC test. See Salinas, 635 F. Supp. 3d at 990–91 (finding genuine dispute exists where purported employees were "free to sell products to . . . customers at any price and on any terms they choose" and were able to set their own schedules). Although Webb clearly exercises some degree of control over Plaintiffs' work, Plaintiffs set their own working hours and, in some sense, their own rates. Moreover, there is no evidence that Webb controls the manner in which Plaintiffs dance or what Plaintiffs wear while dancing. There are no allegations that Plaintiffs must obey any general policies or procedures to dance at the club. Based on the facts presented by Plaintiffs, a reasonable jury could infer that while Webb exercises general control over the business, Plaintiffs exercise control over their work (dancing). The Court thus concludes that there is a question of material fact as to this prong of the ABC test.

### b. Prong B – Performance of Work Outside the Usual Course of Webb's Business

To meet the second prong of the ABC test, the hiring entity must ultimately demonstrate "that the worker performs work that is outside the usual course of the hiring entity's business." Dynamex, 4 Cal. 5th at 957. "Analytically, courts have framed the Prong B inquiry in several ways. They have considered (1) whether the work of the employee is necessary to or merely incidental to that of the hiring entity, (2) whether the work of the employee is continuously performed for the hiring entity, and (3) what business the hiring entity proclaims to be in." Vazquez, 986 F.3d at 1125. Plaintiffs contend that exotic dancers are integral to gentleman's clubs like Angels. (MSJ at 17.) Many other courts have reached the same conclusion. See, e.g.,

Morse v. Mer Corp., 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010) ("[E]xotic dancers are obviously essential to the success of a topless nightclub.") (quoting Harrell v. Diamond A Entm't, Inc., 992 F. Supp. 1343, 1348 (M.D. Fla. 1997)); Clincy v. Galardi South Enter., Inc., 808 F. Supp. 2d 1326 (N.D. Ga. 2011) ("Defendants' argument that nude dancers are not integral to the Club's business is 'absurd[.]'").

As Plaintiffs establish, Angels Cabaret is a gentleman's club owned by Webb, and the primary purpose of that club is to provide adult entertainment to customers. (SUF ¶¶ 1, 5, 11, 21; MSJ at 17.) Plaintiffs are exotic dancers who provide that entertainment at Angels. (Id.) Viewing the evidence in the light most favorable to Defendant, the only conclusion to be drawn from these facts is that Plaintiffs' work is necessary to Angels, and by extension, to Webb. Because workers are classified as employees if the hiring entity fails to meet even one element of the ABC test, the Court thus finds that Plaintiffs are Webb's employees for the purposes of Plaintiffs' California law claims.

Plaintiffs MSJ is therefore **GRANTED** with respect to that issue. Given this finding, the Court need not analyze the third prong of the ABC test.

### 2. Employer-Employee Relationship Under FLSA

#### a. Worker Classification Under FLSA

FLSA covers "employer-employee relationships." Torres-Lopez v. May, 111 F.3d 633, 638 (9th Cir. 1997) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947)). It "was designed … to ensure that each employee covered by the Act would receive 'a fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (quoting Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 578 (1942)) (internal alterations and emphasis omitted). As such, FLSA requires "'employers' [to] pay their 'employees' a minimum wage and overtime pay for hours worked in excess of the statutory workweek." Dawson v. Nat'l Collegiate Athletic Ass'n, 932 F.3d 905, 908 (9th Cir. 2019) (citing 29 U.S.C. §§ 206(a), 207(a)(1)). Courts define "employer" and "employee" "expansive[ly]" under FLSA, "in order to effectuate the broad remedial purposes of the Act." Real v. Driscoll Strawberry Assocs., Inc., 603 F.2d 748, 754 (9th Cir. 1979). These terms are "not limited by the[ir] common law concepts." Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009).

FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "'Employ' includes to suffer or permit to work." Id. § 203(g). As courts have recognized, this definition of employee is broad. See Torres-Lopez, 111 F.3d at 638 (quoting United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945)). Accordingly, courts use the "economic realities" test to discern an individual's employment status more precisely within FLSA's expansive reach. "[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service." Real, 603 F.2d at 754 (quoting Bartels v. Birmingham, 332 U.S. 126, 130 (1947)) (internal emphasis omitted).

To "distinguish[] employees from independent contractors" under the economic realities test, Real and its six factors govern.[5] Id.; see also Tijerino v. Stetson Desert Project, LLC, 934 F.3d 968, 976 (9th Cir. 2019) (confirming that a court must apply the economic realities test under Real to determine whether exotic dancers were employees under FLSA or independent contractors). The Real factors are "non-exhaustive" and include:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

Real, 603 F.2d at 754, 754 n.14. Unlike the ABC test, "[t]he presence of any individual factor is not dispositive," and a court must consider "the circumstances of the whole activity." Id. at 754 (quoting Rutherford Food Corp., 331 U.S. at 730); see also Harris v. Diamond Dolls of Nev., LLC, 521 F. Supp. 3d 1016 (D. Nev. 2021) (weighing Real factors to find that exotic dancers were employees and not independent contractors under FLSA). "Plaintiffs bear the burden of proving that they are employees under FLSA." Flores v. Velocity Express, LLC, 250 F. Supp. 3d 468, 479 (N.D. Cal. 2017). The Court considers each of the Real factors below.

### i. Webb's Control Over Plaintiffs' Work

Under the first factor, "[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." Donovan v. Sureway Cleaners, 656 F.2d 1368, 1371 (9th Cir. 1981). Here, the record demonstrates that Webb exerts some control over Plaintiffs' work, but it is unclear whether that control is significant. As such, this factor tilts slightly toward Plaintiffs, but not substantially so.

First, evidence shows that Webb, not Plaintiffs, primarily controlled Angels's clientele. See Roldan v. PSLA LLC, 2021 WL 4690587, at *4 (C.D. Cal. July 2, 2021) (noting that "Platinum Showgirls had control over customer disputes and over which customers were allowed

---

[5] The Court notes that various manifestations of the economic reality test exist aside from the six-factor analysis articulated in Real. Courts adapt the test to specific contexts, such as for "trainees," Walling v. Portland Terminal Co., 330 U.S. 148 (1947), "volunteers," Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290 (1985), "interns or vocational students," Benjamin v. B & H Educ., Inc., 877 F.3d 1139, 1144–45 (9th Cir. 2017), "members" of a cooperative, Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28 (1961), and "student-athletes," Dawson v. Nat'l Collegiate Athletic Ass'n, 932 F.3d 905 (9th Cir. 2019) (applying Portland Terminal and Goldberg). Real, however, squarely addresses employment-based relationships and controls here.

into the club" to find that the defendants had control over the plaintiffs). Webb has the authority to set the cover charge for Angels and the club's business hours. (SUF ¶¶ 24, 30–33.) Plaintiffs lack authority over which customers can enter or be asked to leave Angels, whereas Webb holds such authority. (Id. ¶¶ 31, 63.) If a dispute arises between a dancer and a customer, Angels's managers or security step in to resolve the situation. (Id. ¶ 53.) Second, Plaintiffs have no managerial responsibilities at Angels. (Id. ¶ 65.) They do not pay for facilities, bills, utilities, or advertising; Webb pays all the club's various costs. (Id. ¶¶ 56–61.)

The control analysis is less clear applied to how dancers earn money while working at Angels. As discussed above, Webb and Garcia testified that dancers can charge more than the base prices set by the club, and that the club does not know how much money dancers take home after they work at Angels. (Webb Dep. Tr. at 44:16–21; Garcia Dep. Tr. at 42:1–7.) Although Webb sets the base price for VIP and table dances, Plaintiffs can charge more than those base prices, and they can set their own prices for dances that occur on the floor of the club. (See id.; SUF ¶¶ 38–40.) Plaintiffs are required to pay locker fees in an amount set by Webb and Angels's managers, but are not required to pay any other fees. (SUF ¶¶ 54–55.)

Additionally, unlike in Harris v. Diamond Dolls of Nevada, LLC and other cases discussing the classification of exotic dancers, here there is no evidence that Angels has any house rules the dancers must follow. 521 F. Supp. 3d 1016 (D. Nev. 2021); see also Harrell v. Diamond A Ent., Inc., 992 F. Supp. 1343, 1350 (M.D. Fla. 1997). The Harris court found persuasive that defendant strip club issued strict rules that required dancers to stay for their entire shifts, have certain grooming practices, not leave the stage while performing nor leave the club until their shift was over, and could not allow their significant others to attend their dances. Id. at 1023. Plaintiffs, however, do not allege they are bound by any similar rules.

Given the foregoing, the Court finds that this factor weighs slightly in favor of Plaintiffs.

### ii. Opportunity for Profit and Loss

The proper analysis under the opportunity for profit and loss factor is whether dancers can "'hang out their own shingle' without incurring significant expenses for overhead, advertising, facilities, employees, and more." Harris, 521 F. Supp. 3d at 1023 (quoting Harrell, 992 F. Supp. at 1352). Many courts have found that while exotic dancers might perform more dances or otherwise drum up business by their own efforts, they nonetheless do not have much ability to maximize profits independently. See, e.g., Reich v. Circle C. Invs., Inc., 998 F.2d 324, 328 (5th Cir. 1993) ("Given its control over determinants of customer volume, [the club] exercises a high degree of control over a dancer's opportunity for 'profit.'"); Harris, 521 F. Supp. 3d at 1023; Harrell, 992 F. Supp. at 1351–52.

The undisputed facts indicate that Plaintiffs play no role in the management of Angels. (SUF ¶¶ 11–14, 26, 41, 43–49.) Although Plaintiffs have the authority to charge more for their dances than the base price, they have no control over the number of customers present at any given time. (See id.) The Court thus finds that this factor weighs in favor of Plaintiffs. See

Steffanie A. v. Gold Club Tampa, Inc., 2021 WL 533540, at *8 (M.D. Fla. Feb. 12, 2021) ("Gold Club controlled the flow of customers through advertising and branding . . . , determined which customers were allowed to enter the club [], and charged base rates for its VIP dances and champagne rooms. . . . In doing so, Gold Club 'exercised significant control over the Dancers' opportunity for profit.'")

### iii. Relative Investments

The undisputed facts show that Plaintiffs have no meaningful investments in the club. Webb pays for all club costs, including for rent, facilities, and equipment, and Plaintiffs have no such responsibility. (SUF ¶¶ 11–14, 26, 41, 43–49.) This factor thus weighs heavily in favor of Plaintiffs. See Harrell, 992 F. Supp. at 1350 ("The courts which have addressed this factor have universally concluded that a dancer's investment is minor when compared to the club's investment.")

### iv. Skill and Initiative

There are no facts in the record which indicate that exotic dancing is a special skill. It is undisputed that the only requirements for being hired to dance at Angels are a willingness to dance topless and being of legal age. (SUF ¶ 50.) This factor therefore weighs in Plaintiffs' favor. See McFeeley v. Jackson St. Ent., LLC, 825 F.3d 235, 243 (4th Cir. 2016) ("[E]ven the skill displayed by the most accomplished dancers in a ballet company would hardly by itself be sufficient to denote an independent contractor designation.").

### v. Permanency of the Relationship

Plaintiffs contend that because Angels did not put any time limit on how long Plaintiffs could work at the club, this factor weighs in Plaintiffs' favor. (MSJ at 13; SUF ¶ 2.) Plaintiffs are correct that working relationships that extend over one year can signify permanence, see Clincy, 808 F. Supp. 2d at 1348, but courts have nonetheless found that exotic dancers tend to be transient because they are permitted to work at multiple clubs at the same time. See Reich, 998 F.2d at 328. Plaintiffs here have worked at Angels over the last four years, SUF ¶ 2, but Plaintiffs do not submit any facts indicating whether they also worked at other clubs during that time. The Court thus finds that this factor is neutral.

### vi. Integral Part

For the reasons set out above with respect to the employer-employee test under California law, the Court concludes that Plaintiffs' work is an integral part of Webb's gentleman's club business. Moreover, "[t]hat dancers play such an integral role is highly indicative of their economic dependence." Harrell, 992 F. Supp. at 1352. This factor thus weighs heavily in favor of Plaintiffs.

//
//

### vii. Consideration of All Factors

Even in the light most positive to Webb, all but one of the Real factors weigh in favor of finding that Plaintiffs are "as a matter of economic reality . . . dependent upon the business to which they render service." Real, 603 F.2d at 754. The only factor which does not weigh in favor of that conclusion is neutral. The Court therefore finds that Plaintiffs are employees under FLSA, and **GRANTS** Plaintiffs' motion as to the issue of misclassification under that statute.

### 3. Webb's Liability as an Employer Under FLSA

FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit has clearly held that "the definition of employer under FLSA is not limited by the common law concept of employer, but is to be given an expansive interpretation in order to effectuate FLSA's broad remedial purposes." Boucher, 572 F.3d at 1090 (internal quotations removed). There may be "several simultaneous employers who may be responsible for compliance with FLSA." Falk v. Brennan, 414 U.S. 190, 195 (1973).

Given this broad approach to defining "employer" under FLSA, "[t]he determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity." Id. (internal quotations removed). "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Id. (internal quotations removed). The primary factors courts consider when applying this test are whether an individual has (1) "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions," (2) "the power to hire and fire employees," (3) "the power to determine salaries," and (4) "and the responsibility to maintain employment records." Id. at 1091.

Plaintiffs contend that Webb is liable as an employer under FLSA as a matter of law. (MSJ at 18–20.) In support of that contention, they offer the following undisputed facts: Webb is currently the administrator of her deceased husband's estate, which includes Entertainment, LLC, and thus Webb is the sole owner of Angels, see SUF ¶ 7; she has the authority to hire and fire dancers, SUF ¶ 18; she checked Angels's security cameras to ensure the club was operating properly, SUF ¶ 19; she set the cover charge and business hours for the club, SUF ¶ 27; she set the base prices for VIP dances, SUF ¶ 39; and, she pays for all of the club's operational costs, SUF ¶ 42. Webb offers no counterargument.

Construing all the evidence in favor of Webb, the court concludes that there is no genuine issue of material fact regarding Webb's status as an employer under FLSA. Webb exercised operational control over the club and was involved in hiring and firing dancers. Although the dancers could decide to charge customers more money, the general structure of the enterprise— who pays whom, when, and how much in the first instance—were controlled by Webb. Webb is

the person responsible for the day-to-day operation of the club, and keeps tabs on other high-level workers, including the club's managers. Webb is the sole owner of the entity which owns Angels. Plaintiffs have submitted uncontroverted facts sufficient to conclude as a matter of law that Webb exerted economic control over Plaintiff dancers. See Reich v. Circle C Invs., Inc., 998 F.2d 324, 329 (5th Cir. 1993) (nightclub operator hired dancers, was identified by employees as their supervisor, and gave specific instructions to employees). As such, a rational trier of fact would not be able to find for Webb on this issue. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### C. Webb's Good Faith Affirmative Defense

Webb asserts a good faith defense under FLSA, 29 U.S.C. § 260. (See Dkt. No. 18 ¶ 157). FLSA good faith defense allows a defendant to avoid liability if she "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the administrator of the Wage and Hour Division of the Department of Labor. See 29 U.S.C. § 259. FLSA also allows an employer found liable for past wages to avoid liability for liquidated damages by proving a reasonable, good-faith belief that it was not violating FLSA. See 29 U.S.C. § 260.

"[T]he employer has the burden of establishing subjective and objective good faith in its violation of FLSA." Local 246 Util. Workers Union v. S. Cal. Edison Co., 83 F.3d 292, 297 (9th Cir. 1996). To meet this burden, the employer must establish that it had "an honest intention to ascertain and follow the dictates of FLSA," and "reasonable grounds for believing that its conduct complied with FLSA." Id. at 298.

Webb offers no facts to support her good faith defense, and thus fails to carry her burden to create a triable issue regarding that defense. See Helton v. Factor 5, Inc., 26 F. Supp. 3d 913, 923 (N.D. Cal. 2014). The Court therefore **GRANTS** Plaintiffs' MSJ as to this issue.

### D. Willful Failure to Comply with FLSA

"A violation of FLSA is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 918 (9th Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Upon a finding that defendant's conduct was willful, the two-year statute of limitations can be extended to three years. See Alvarez v. IBP, Inc., 339 F.3d 894, 909-910 (9th Cir. 2003).

Plaintiffs contend that Webb's ongoing misclassification of Plaintiffs in the two years since this lawsuit was filed amounts to willfulness. (MSJ at 21–22.) Not so. The cases on which Plaintiffs rely concern defendants who had previous "run-ins with the Labor Department" such that they were "on notice of other potential FLSA requirements." Chao, 346 F.3d at 919. They do not involve ongoing cases in which the classification of workers is a central dispute, as is the case here. "An employer's knowledge that FLSA was in the picture is not sufficient to support

willfulness." McLaughlin, 486 U.S. at 133. Because Plaintiffs offer no evidence of willfulness, their MSJ is **DENIED** as to this issue.

### E.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' MSJ.


**IT IS SO ORDERED.**